### WALKER *et al. v.* SMITH.

#### *Factor.—Damages.*

One who accepts a consignment, is liable in damages for a breach of instructions, though his services were rendered gratuitously.

Where there is a legal measure of damages, the jury are bound by it, though the action sound in tort.

CASE.   On the trial of this cause, the following facts appeared: The plaintiffs were merchants of London; and in March 1796, shipped and consigned to the defendant certain goods, invoiced at 270l. 14s. 8d. sterling, accompanied with a letter, stating that " these goods were shipped by order of Mr. J. B., and for his account; and he was to remit us the amount, on his arrival at Philadelphia: but since they were shipped, some circumstances have occurred, which have created some doubts in our minds, respecting his solidity; and by the advice of our friends, we have adopted this method to secure ourselves, through your friendly assistance, which we request on this occasion.   As we do not want to deprive B. of the benefits to be derived from the sale of these goods, we wish you to hold them at his disposal, but not to deliver them to him, without being paid for the amount, or having such security given you therefor, as is satisfactory to yourself. Should he not be able to effect either of these, in a reasonable time, we would wish you to dispose of them for our account, and remit us the amount in good bills."   The defendant duly received the goods, but delivered them over to B., without receiving payment, or exacting security; and shortly afterwards, B. failed.   The defendant, however, representing other creditors of B., as well as the plaintiffs, made a composition, by which he received for the proportion of the plaintiffs, 151l. 16s. sterling, and remitted that sum to them, without charging commissions, in a letter dated the 11th of December 1800.   The plaintiffs refused to ratify the composition, and brought the present suit to recover the invoice value of the goods, with interest, according to the usage of trade.

On the trial, *Ingersoll* assumed three grounds of defence: 1st. That there was no cause of action; as the defendant had accepted the consign-

Walker v. Smith.

ment, on principles of mere courtesy, without interest, directly or indirectly; and had exercised a fair and impartial *discretion, for the equal inter- [*390 est of all the creditors of B. 2d. That even if the action could be maintained, it is a case, in which the jury are at liberty to give less by way of damages than the amount of the loss actually proved. (1 Dall. 180; 2 Wils. 328; 2 Bac. Abr. 266; Bull. N. P. 156; 1 Esp. N. P. 179.) 3d. That the defendant, acting as a general consignee, may be considered as selling the goods to B., and, consequently, is not liable to his principal, for more than he actually received. (Willes 407.)

For the plaintiffs, *J. Sergeant* and *Dallas* contended : 1st. That although the defendant was not obliged to accept the consignment, yet, if he did accept it, he was answerable, like every other agent or factor, for a breach of the positive orders of his principal. (1 Beawes L. M. 44, 46; Moll. 493, 497; 4 Com. Dig. 227–8; 2 Cha. Cases 57; 4 Rob. 218; 1 Marsh. 206–7, 209, 210.) 2d. That although the jury had a great and useful latitude in cases of *tort*, and mixed cases of negligence and *tort*, where no precise standard of damages was established ; the legal discretion of a jury could indulge in no capricious or conjectural estimate, in cases of contract, express or implied, where a mere calculation of figures furnishes a certain and uniform standard of right. (2 W. Bl. 942 ; 4 T. R. 654–5 ; 5 Ibid. 255 ; Barnes 455, 448; 1 Str. 425.) 3d. That on these principles, the defendant was liable for the debt, as if he were a purchaser of the goods; and every purchaser is chargeable with interest, after the usual term of credit is expired. (1 Dall. 265 ; Doug. 361 ; 2 Bos. & Pul. 337 ; *Crawford* v. *Willing, ante,* p. 286.)

THE COURT, in their charge to the jury,(a) expressly declared an opinion, that, on the evidence, the plaintiffs were entitled to recover the full amount of the original debt, with such reasonable compensation for the delay of payment, as the jury should think proper.(b)

The jury, however, gave a verdict for only $468.44, which was the amount of the plaintiffs' demand (after crediting the remittance), estimating the sterling money at par, allowing the defendant a commission, and deducting the interest. The jury added, that the plaintiffs should pay the costs.(c)

*The *plaintiffs'* counsel then moved for a new trial, because the [*391 verdict was against law, evidence and the charge of the court : but

---

(a) For a full report of the charge of WASHINGTON, J., see 1 W. C. C. 153.

(b) It appears by the record, that the action was brought to October Sessions 1801, and that the declaration was in *assumpsit,* with the following counts, two in *indebitatus assumpsit,* for goods sold and delivered and for money had and received, and one *quantum valebant.*

(c) The finding of the jury, that the plaintiffs should pay the costs, was, at once, abandoned by the defendant's counsel, on general principles; but *Ingersoll* stated, that the first judicial law provided, that the plaintiff should not be allowed costs, if he recovered a sum less than $500 (6 vol. 16, § 3; 1 vol. 61, § 20); and that although the action was instituted, when the sum required, in that respect, was only $400 ; yet he referred to a decision of Judge CHASE, in the circuit court of Delaware, which pronounced, that the act repealing the latter provision, revived the former, and was to be applied to all suits, present or future. *Dallas* referred, however, to the acts of congress (5 vol. 237, § 11; 6 vol. 16, § 4). And the court declared that the plaintiffs were clearly entitled to costs.

after argument, the motion was overruled ; and it was observed by WASH-
INGTON, Justice, that although he was not satisfied with the verdict, nor
should he have assented to it as a juror ; yet, the question of damages, or of
interest in the nature of damages, belonged so peculiarly to the jury, that he
could not allow himself to invade their province ; while he felt a determina-
tion to prevent on their part, any invasion of the judicial province of the
court. (*a*)

*392]                        *APRIL TERM, 1805.

Present—WASHINGTON, Justice, and PETERS, District Judge.

(*a*) For the report of the case, on the motion for a new trial, see 1 W. C. C. 202.

